UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

*Plaintiff*,

v.

DEPARTMENT OF JUSTICE,

*Defendant*.

Civil Action No. 24-02416 (AHA)

**Memorandum Opinion and Order**

This Freedom of Information Act ("FOIA") suit concerns a request for records related to allegations of prosecutorial misconduct by former Assistant U.S. Attorney Terra Morehead. In April 2024, Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") submitted a FOIA request to two offices within the Department of Justice ("DOJ"). ECF No. 10-3 ¶¶ 1, 8. CREW asked for records related to Morehead's alleged violations of legal or ethical duties, as well as DOJ's investigation into her alleged misconduct and any disciplinary action taken. *Id.* ¶ 1.

One of the DOJ offices advised CREW that releasing the material without an authorization would result in "an unwarranted invasion of personal privacy." *Id.* ¶ 12 (citation omitted). After not receiving any responsive records, CREW filed this action alleging DOJ wrongfully withheld documents. ECF No. 10-1 ¶ 7. While this litigation was pending, the other DOJ office provided a "*Glomar* response," meaning it refused to confirm or deny the existence of the requested records. *Id.* ¶ 8.[1]

---

[1] The *Glomar* response gets its name from a case where the Central Intelligence Agency refused to confirm or deny it had records about the activities of a ship called the *Hughes Glomar Explorer*. *See Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976).

Both parties move for summary judgment as to whether DOJ was justified in its *Glomar* response and categorical withholding of any responsive documents. ECF Nos. 10, 11. The Court concludes it was not. The Court therefore denies DOJ's motion for summary judgment and grants CREW's cross motion.

**I.     Discussion**

FOIA "mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). Those exemptions "must be narrowly construed." *Id.* (internal quotation marks and citation omitted). "The burden is on the agency to justify withholding the requested documents," and a district court must "determine *de novo* whether non-disclosure was permissible." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015). In the FOIA context, "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (alteration in original) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)).

Here, DOJ relies on FOIA exemptions 6 and 7(C) both for its *Glomar* response and to argue that it may categorically withhold any responsive documents. Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) encompasses "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). "Exemption 7(C) is more protective of privacy than Exemption 6" and sets a lower bar for withholding information. *ACLU v. U.S.*

*Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 496 n.6 (1994)). Because DOJ's arguments fail even under exemption 7(C)'s lower bar, the Court at this stage assumes without deciding that the records in question were compiled for law enforcement purposes.

### A.  DOJ Has Not Shown A *Glomar* Response Is Justified

In some FOIA cases, "merely acknowledging the existence of responsive records would itself 'cause harm cognizable under [a] FOIA exception.'" *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (alteration in original) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). "In that event, an agency can issue a *Glomar* response, refusing to confirm or deny its possession of responsive documents," but only if "the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Id.* (quoting *Wolf*, 473 F.3d at 374). A plaintiff "can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a *Glomar* response is designed to protect." *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013).

DOJ's *Glomar* response was not justified here for two reasons. First, the information DOJ seeks to withhold—the existence or nonexistence of records about Morehead's alleged misconduct and any DOJ investigation—is already in the public domain. In order "to overcome an agency's *Glomar* response based on an official acknowledgement, the requesting plaintiff must pinpoint an agency record that both matches the plaintiff's request and has been publicly and officially acknowledged by the agency." *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011). But "if the prior disclosure establishes the existence (or not) of records responsive to the FOIA request, the prior disclosure necessarily matches both the information at issue—the existence of records—and the specific request for that information." *Wolf*, 473 F.3d at 379 (emphasis omitted).

3

That's so here. In other litigation, the acting U.S. Attorney for the District of Kansas—where Morehead worked—testified that Morehead's "reputation is poor for veracity" and that a district court had found Morehead "failed to be truthful." ECF No. 11-11 at 6–7, 16. The acting U.S. Attorney also said he was "aware that there have been allegations" of Morehead refusing to provide evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). ECF No. 11-11 at 15–16; *see also id.* at 13 (stating that circumstances of allegations that Morehead coerced false testimony "sound familiar to me"). And he testified that, to his knowledge, there had been no disciplinary consequences imposed on Morehead for "untruthfulness." *Id.* at 5–6. The acting U.S. Attorney's testimony thus publicly acknowledged Morehead's alleged violations of legal and ethical duties, as well as the lack of discipline she faced. DOJ cannot claim "it would reveal anything not already in the public domain" to say the agency has records related to those alleged violations. *ACLU*, 710 F.3d at 430; *see also Marino v. Drug Enf't Admin.*, 685 F.3d 1076, 1082 (D.C. Cir. 2012) ("[A] federal prosecutor's decision to release information at trial is enough to trigger the public domain exception where the FOIA request is directed to another component within the Department of Justice." (emphasis omitted)).

DOJ suggests this testimony does not constitute an official disclosure because the acting U.S. Attorney responded, "I think so" when asked if he was aware of certain allegations and said only that he was "not aware of any discipline." ECF No. 14 at 12 (citations omitted). Whatever the force of that argument, it is an incomplete account of the testimony. The acting U.S. Attorney specifically stated he was "aware that there have been allegations" of Morehead refusing to provide *Brady* or *Giglio* evidence. ECF No. 11-11 at 15–16. That confirmation "makes it neither 'logical' nor 'plausible' to maintain that the Agency does not have any documents" related to allegations of

4

misconduct against Morehead. *ACLU*, 710 F.3d at 431. The agency's *Glomar* response accordingly was not proper under the public domain exception.

The *Glomar* response was also unjustified because DOJ has not shown that confirming or denying the existence of responsive records would harm Morehead given information that is already public. *See Wolf*, 473 F.3d at 374 (noting that agency "may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under [a] FOIA exception" (citation omitted)). Several judicial decisions have discussed allegations of misconduct against Morehead. *See* ECF No. 11-1 at 17–18 (collecting examples). For instance, one district court found "strong evidence that AUSA Morehead communicated a veiled threat of prosecution or threat of creating further complications in [a witness's] case if [he] 'got in her way' by testifying in Defendant's case." *United States v. Orozco*, 291 F. Supp. 3d 1267, 1278 (D. Kan. 2017), *rev'd in part on other grounds*, 916 F.3d 919 (10th Cir. 2019). The court also concluded that Morehead "acted in bad faith" and remarked that "[h]er lack of candor in admitting, much less in volunteering, that she had provided late-disclosure of Brady information is quite troubling." *Id.* at 1278–79. Another court imposed a downward variance at sentencing because Morehead "failed to provide defendant and defense counsel with a full criminal history and failed to be truthful about [an individual's] attempt to take his own life." ECF No. 11-12 at 4 (excerpt from sentencing transcript in *United States v. Giannukos*, No. 15-cr-20016 (D. Kan. May 10, 2021)).

Given that this information is already public, it would not further harm Morehead's privacy for DOJ to confirm or deny the existence of records concerning allegations of misconduct. These allegations "are already a matter of public record." *See Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 69 (D.C. Cir. 2018) (holding that any interest attorney accused of misconduct "might have had in keeping his name in the free-and-clear has already largely evaporated"). DOJ insists that *Bartko* is

5

distinguishable because there the Fourth Circuit and the U.S. Attorney had publicly announced the matter was being referred for investigation, while here there has been no such public announcement. ECF No. 14 at 13. But in *Bartko*, the D.C. Circuit also relied on the fact that "allegations of misconduct during the Bartko trial are already a matter of public record." 898 F.3d at 69. That is true here: allegations of misconduct against Morehead are already public, even if there has not been a judicial referral or a public announcement by the U.S. Attorney. *See also CREW v. U.S. Dep't of Just.*, 746 F.3d 1082, 1092 (D.C. Cir. 2014) (where individual's public statements confirmed he had been under investigation, agency's acknowledgment of responsive records "would not itself cause harm by confirming that fact, rendering a *Glomar* response inappropriate"). DOJ's *Glomar* response was therefore not justified.

### B. DOJ Has Not Shown Categorical Withholding Of Documents Is Justified

DOJ also argues that, even if any responsive records exist, CREW is not entitled to them because "any and all records responsive to the third-party request are exempt under Exemptions 6 and 7(C)." ECF No. 14 at 3 (citation omitted). Under some circumstances, "the government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether the specific claimed exemptions are properly applied." *CREW*, 746 F.3d at 1088 (citation omitted). But categorical treatment is appropriate only "when the range of circumstances included in the category characteristically support[s] an inference that the statutory requirements for exemption are satisfied." *Id.* at 1088–89 (alteration in original) (internal quotation marks and citation omitted).

To evaluate whether withholding is appropriate, the Court must "balance the [] privacy interest against the public interest in disclosure." *Id.* at 1091 (alteration in original) (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004)). According to DOJ, individuals

"have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation." ECF No. 10 at 6 (quoting *CREW*, 746 F.3d at 1091); *see also* ECF No. 10-1 ¶ 21 ("The fact that an individual was considered a potential subject of an [Office of Professional Responsibility] investigation is likely to engender speculation, could stigmatize the individual, and could subject him or her to harassment or criticism."). To be sure, Morehead may have at least some privacy interest in certain records. *See Kimberlin v. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998) (concluding that disclosure of investigative file would constitute invasion of attorney's privacy). But that privacy interest is diminished by the fact that, as discussed above, allegations of misconduct against Morehead are already public. *See id.* (explaining that attorney's statement to press acknowledging investigation "undoubtedly does diminish his interest in privacy: the public already knows who he is, what he was accused of, and that he received a relatively mild sanction"); *Bartko*, 898 F.3d at 69 (attorney's privacy interest was "substantially diminished" where allegations of misconduct were "already a matter of public record").

As for the public interest at stake, DOJ emphasizes that the request for records concerns only "the conduct of a staff-level government lawyer" rather than "a more pervasive or wide-ranging investigation that would be more revealing as to what the government is up to." ECF No. 10 at 6–7; *see also* ECF No. 10-1 ¶ 20 ("[CREW] has not shown nor has [the Office of Professional Responsibility] identified how any investigation of the conduct of a single line attorney, if one existed, would shed light on how the government operates."). DOJ underplays the relevant public interest here. As the D.C. Circuit has explained: "The public has an interest in knowing 'that a government investigation itself is comprehensive, that the report of an investigation released publicly is accurate, that any disciplinary measures imposed are adequate, and that those who are

7

accountable are dealt with in an appropriate manner.'" *Bartko*, 898 F.3d at 69 (citation omitted). And that public interest "crescendos when the misfeasance of a federal prosecutor with 'the power to employ the full machinery of the state in scrutinizing any given individual' is at stake." *Id.* (citation omitted). That public interest is not lessened simply because, as DOJ suggests, this case involves allegations of prosecutorial misconduct by only one attorney rather than department-wide practices. The public has a substantial interest in understanding the scope of any such prosecutorial misconduct, as well as how DOJ responded.

Given the privacy and public interests at play, DOJ may ultimately be able to show that some responsive documents are subject to protection under exemptions 6 or 7(C)—but it cannot do so at this stage on a categorical basis. A blanket approach like DOJ proposes "is appropriate only if 'a case fits into a genus in which the balance *characteristically* tips in one direction.'" *CREW*, 746 F.3d at 1095 (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989)). But here, "there are substantial interests on both sides of the scale." *Id.* DOJ therefore cannot categorically withhold all documents that would be responsive to CREW's requests. *See id.* at 1096 ("Although a substantial privacy interest is at stake here, in light of the similarly substantial countervailing public interest, the balance does not characteristically tip in favor of non-disclosure."). Instead, DOJ "must attempt to make a more particularized showing as to what documents or portions thereof are exempt." *Id.* This Court will then "weigh what information may be withheld under [the relevant exemptions] and whether any information is reasonably segregable and may be disclosed." *Id.*; *see also ACLU*, 710 F.3d at 432 ("With the failure of the CIA's broad *Glomar* response, the case must now proceed to the filing of a *Vaughn* index or other description of the kind of documents the Agency possesses, followed by litigation regarding whether the exemptions apply to those documents.").

8

**II.     Conclusion**

For these reasons, DOJ's motion for summary judgment, ECF No. 10, is denied, and CREW's cross motion for summary judgment, ECF No. 11, is granted. The parties shall meet, confer, and file a joint status report by August 18, 2025, proposing a schedule for next steps in this matter.

_____
AMIR H. ALI
United States District Judge

Date:   August 4, 2025